FOR PUBLICATION

# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
## APPELLATE DIVISION

| | |
|---|---|
| NORDEL CHARLES, JR. | ) |
| | ) D.C. Crim. App. No.2006-45 |
| *Appellant,* | ) |
| | ) Super. Ct. Crim. No. 2005-292 |
| **v.** | ) |
| | ) |
| PEOPLE OF THE VIRGIN ISLANDS | ) |
| | ) |
| *Appellee.* | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Brenda J. Hollar presiding.

**Considered: March 5, 2010**
**Filed: July 24, 2012**

**BEFORE: CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the Virgin Islands; and **JULIO BRADY**, Judge of the Superior Court, Division of St. Croix, sitting by designation.

**ATTORNEYS:**

**A. James Casner, III, Esq.**
St. Thomas, U.S.V.I.
        *For the Appellant,*

**Matthew C.Phelan, AAG**
St. Thomas, U.S.V.I.
        *For the Appellee.*

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 2

<div style="border: 1px solid black; text-align: center;">

## MEMORANDUM OPINION

</div>

**PER CURIAM,**

Nordel Charles ("Charles") appeals the Superior Court's May 31, 2006, Judgment in this matter.

Charles' attorney, James A. Casner ("Casner"), has filed a motion to withdraw as counsel and submitted a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967) ("*Anders* brief"), in which he advised this Court that he finds no basis for Charles' appeal. The People of the Virgin Islands have not responded to Casner's brief. Charles was served with a copy of Casner's brief, but did not file a responsive brief.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2005 Lahkeal George ("George") attended an event at the V.I. Taxi Association. George spent time socializing with fellow attendees. Among them, were acquaintances Charles and Shawn Audain ("Audain"). George spoke briefly with Charles and bought him a drink.

Later, George had an exchange with Charles and Audain in which he told them that he had heard someone say that Charles and Audain were angling to kill him. Audain and Charles assured George that it was merely idle talk, and the men parted ways amicably.

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 3

At approximately 4:00 a.m., George left the V.I. Taxi Association and got in his car to drive home. As he was driving home, a car driven by Audain and another car, driven by an individual identified as Keelan, were in front of him. While driving down a hill, he observed someone fire shots out of the vehicle driven by Keelan. Shortly thereafter, the car Keelan was driving got into an accident. George noticed that Charles was one of the passengers in that car. George inquired if he could help and was told that Audain would handle things. He then proceeded down the hill toward his residence.

At approximately 4:40 a.m., George was shot multiple times as he was attempting to enter his house. The Virgin Islands Police Department ("VIPD") and EMTs responded to the scene.

George told the police that three individuals were involved in the shooting. He identified them as Boyo of Tutu Valley, Bugee[1] of Tutu Valley, and Fat Boy a/k/a "Big Black" of Tutu Valley. (J.A. 16.)

On June 14, 2005, the investigating detective, Detective Albion George ("Detective George") presented George with a photo array containing six photographs, including a photograph of Charles. Prior to displaying the photo array, Detective George informed George that "Boyo" was going to be in the photo array.

---

[1] In the Amended Information, this alias appears as "Bugie."

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 4

George identified Charles a/k/a Boyo as the person that shot him on May 22, 2005, at his home.

On March 10, 2006, Charles was charged with his co-defendant Audain in a sixteen-count amended information. Count Nine charged Charles with attempted first degree murder in violation of V.I. CODE ANN. tit. 14, §§ 921 and 922(a), and V.I. CODE ANN. tit. 14 § 331, and V.I. CODE ANN. tit. 14, § 11. Counts Ten, Thirteen, and Fifteen charged Charles with using an unlicensed firearm during the commission of a crime of violence in violation of V.I. CODE ANN. tit. 14, § 2253(a), and V.I. CODE ANN. tit. 14, § 11(a). Counts Eleven and Twelve charged Charles with first degree assault in violation of V.I. CODE ANN. tit. 14, § 295(a), and V.I. CODE ANN. tit. 14, § 11(a). Count Fourteen charged Charles with first degree robbery in violation of V.I. CODE ANN. tit. 14, §§ 1861 and 1862(1), and V.I. CODE ANN. tit. 14, § 11(a). Count Sixteen charged Charles with unauthorized possession of ammunition, in violation of V.I. CODE ANN. tit. 14, § 2256(a) and V.I. CODE ANN. tit. 14, § 11(a).

On December 6, 2005, Charles filed a motion to suppress the identification from the photo array. Charles challenged the procedures used in obtaining the identification. He asserted that Detective George was related to the victim and this biased his presentation of the array. He objected to the composition of

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 5

the array, asserting that George knew four or five of the six individuals comprising the array.  He also complained that Detective George told the victim that Boyo was among the individuals in the array. The trial court denied Charles' motion to suppress.

The trial in this matter was held on April 18, 2006, and proceeded until April 20, 2006. On April 20, 2006, a jury found Charles guilty on all eight counts charged against him in the amended information.

During the trial, Charles moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the People's case (J.A. at 241), at the close of his case (J.A. at 271), and after the verdict was read (J.A. 504).

The trial court ordered briefing on the Rule 29 motion.  On April 25, 2006, Charles filed a response to that Order. Thereafter, the trial court denied Charles' motion for judgment of acquittal in a Memorandum Opinion dated May 31, 2006.  Charles was sentenced on that same day. The trial court entered its Judgment and Commitment Order on June 7, 2006. Charles timely filed this appeal.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review judgments and orders

Charles v. Gov't of the V.I.
Crim App. No. 2006-45
Memorandum Opinion
Page 6

of the Superior Court in criminal cases. *See* Revised Organic Act

§ 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (2004).

We adhere to a two-part inquiry when analyzing *Anders*

briefs. *See United States v. Youla,* 241 F.3d 296, 300(3d

Cir.2001).  First, we must determine whether counsel adequately

fulfilled the [ *Anders* ] rule's requirements; and second, whether

an independent review of the record presents any nonfrivolous

issues". *United States v. Youla,* 241 F.3d 296, 300 (3d

Cir.2001)(citing *United States v. Marvin,* 211 F.3d 778, 780 (3d

Cir. 2000)).  With regard to the first issue, an attorney

submitting an *Anders* brief has the duties "(1) to satisfy the

court that counsel has thoroughly examined the record in search

of appealable issues, and (2) to explain why the issues are

frivolous." *Id.* (citation omitted).

### III. ANALYSIS

### A. Adequacy of *Anders* Brief

Under the first inquiry, counsel's brief meets the

requirements of *Anders.*  Counsel has provided a sufficient record

for review on appeal.  The Joint Appendix submitted with

counsel's *Anders* brief, includes: the motion to suppress; the

transcript of the suppression hearing; trial transcripts;

Charles' motion for judgment of acquittal; and the trial court's

Memorandum Opinion outlining the reasons for its denial of

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 7

Charles' motion for judgment of acquittal.

In his *Anders* brief Casner identified the following arguably colorable issues on appeal: (1) that the Superior Court erred in denying Charles' motion to suppress his identification on the grounds it was unduly suggestive; (2) that the Superior Court erred in denying Charles' motion for judgment of acquittal on Counts 9, 10, 11, 12, 13, 14, 15 and 16; and (3) that the sentence was not in accordance with Virgin Islands law. In a twenty-three page brief, these issues are explored and counsel's reasoning is supported by citations to both the record and appropriate legal authority. As such, we believe that counsel's brief satisfies the first *Anders* requirement. *See United States v. Rankin*, 365 Fed. Appx. 358, 361 (3d Cir. 2010)(concluding that the first prong in an *Anders* inquiry was met where it was "apparent that Counsel thoroughly reviewed both the record and the law"); *United States v. Gretzinger*, 209 Fed. Appx. 117, 120 (3d Cir. 2006)(adjudging the first *Anders* requirement satisfied where counsel's brief "discussed the record and proceedings, explained how the court determined the imposed sentences, and referenced the applicable case law").

## B. Arguable Merits to the Appeal

Where the *Anders* brief initially appears adequate on its face," we next inquire "whether an independent review of the

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 8

record presents any nonfrivolous issues," *Youla,* 241 F.3d at 300-01. "[A]n appeal on a matter of law is frivolous where '[none] of the legal points [are] arguable on their merits.' " *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (alterations in original) (quoting *Anders,* 386 U.S. at 744). The Court will consider the available issues identified in Casner's brief seriatim.

## 1. Whether the Superior Court Erred in Denying Charles' Motion to Suppress

Prior to trial, Charles moved to suppress George's out-of-court identification of Charles as unduly suggestive. The first colorable issue raised by Casner is whether the trial court's denial of Charles' motion to suppress constituted error.

An identification procedure runs afoul of the Fifth Amendment guarantee of due process if it "is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006). "Unnecessary suggestiveness 'contains two component parts: that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures.' " *Id.* (quoting *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991)). "[S]howing a witness a photographic array can constitute a denial of due process when police attempt to

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 9

emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who an identifying witness should select." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003)(citing *Simmons v. United States*, 390 U.S. 377, 383 (1968)).

In assessing whether an identification was reliable, we consider the totality of the circumstances including:

> 1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation.

*Brownlee*, 454 F.3d at 139 (citing *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972)).

At the suppression hearing, Detective George testified that he did not have knowledge of any family relation between him and Lahkeal George. (J.A. 109.) This testimony belied Charles' suggestion that improper familial concerns intruded on the identification procedures. As such, there is an insufficient factual basis to infer familial bias.

The Court next turned to Detective George's statement in a report signed by him that *"The undersigned told Mr. George that a photo array was being prepared of a/k/a Boyo and that the undersigned will show him the same."* (J.A. 23.) The trial court

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 10

reasoned that "the witness to a crime usually assumes that the defendant is in one of the photos," and concluded that "[a]lthough it should not be condoned, what Detective George did was simply to state the obvious and [was] not unnecessarily suggestive." (*Id.* at 188.) We join the trial court's concern over the detective's description of the photo array. As found below though, we do not find that remark unnecessarily suggestive.

Finally, the Court considers the inclusion of individuals known to the defendant among the six individuals comprising the photo array. The presence of individuals with whom an identifying witness is familiar may compromise the integrity of the photo array. If an identifying witness knew every subject in the array, save a suspect, the suspect would obviously be conspicuous. The trial court did not expound at length on this issue. However, it noted that it had reviewed the photo array and found that "the individuals are similar in age, height, complexion, and appearance" (*Id.*) The trial court remarked that "[e]ven though it is alleged that the victim knew four or five of the six individuals contained in the photo array, no one has suggested that the officer in Forensic who prepared the array knew that and deliberately composed an array which would automatically result in the identification of Nordel Charles." (*Id.* at n.3.) Though this was not the case here, as George knew

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 11

Charles from prior interactions, the Court notes its concern about a photo array that might be composed entirely of individuals with whom the witness shares a favorable prior relationship, and a suspect.

Even assuming the array at issue here was unduly suggestive, there was sufficient indicia of reliability in the identification. George testified that he had the opportunity to view Charles at a distance of approximately five feet during the shooting. The spatial proximity of the identification coupled with the temporal proximity of its occurrence, less than a month after the commission of the crime, provide the necessary reliability.

The trial court denied Charles' motion to suppress. Viewing this evidence in the light most favorable to the government, the Court agrees with the trial court's ruling.

## 2. Sufficiency of the Evidence

Charles also challenges the sufficiency of the evidence supporting his conviction. Counsel argues that there was ample evidence to convict Charles of the offenses, and thus an appeal on these grounds would be frivolous.

### a. Attempted Murder

Charles was convicted of attempted murder. The offense of first degree murder is codified in title 14, section 922(a)

("section 922(a)") of the Virgin Islands Code. Section 922(a)
provides: "All murder which-(1) is perpetrated by means of
poison, lying in wait, torture, detonation of a bomb or by any
other kind of willful, deliberate and premeditated killing ... is
murder in the first degree." V.I.Code Ann. tit. 14, § 922(a). To
convict a defendant of first degree murder, the government needs
to prove beyond a reasonable doubt that (1) the defendant
unlawfully killed a human being with malice aforethought, and (2)
the killing was willful, deliberate and premeditated. *See* V.I.
Code Ann. tit. 14, § 921 ("Murder is the unlawful killing of a
human being with malice aforethought."); *Gov't of the V.I. v.
Lanclos,* 477 F.2d 603, 606 (3d Cir. 1973) (explaining the
principles of willfulness, deliberation, and premeditation in
regard to a section 922(a) conviction) (quoting *Gov't of the V.I.
v. Lake,* 362 F.2d 770, 776 (3d Cir. 1966)).

> Under Virgin Islands law, one who unsuccessfully
> attempts to commit an offense is subject to criminal
> liability for such attempt. *See* 14 V.I.C. § 331. Though
> not defined in our statutes, the standard for
> determining attempt liability has been judicially
> defined to require proof that the perpetrator took a
> substantial step toward completion of the underlying
> crime. *See e.g., Government of V.I. v. Albert,* 18 V.I.
> 21, 24 (D.V.I.1980); *see also, Parson v. Government* of
> V.I., 167 F.Supp.2d 857 (D.V.I. App.Div. 2001). Our
> courts have adopted the following two-prong test for
> determining whether a defendant's acts constituted a
> "substantial step" for the purpose of attempt
> liability: 1) the perpetrator bore an intent to do an
> act or bring about certain consequences which in law

Charles v. Gov't of the V.I.
Crim App. No. 2006-45
Memorandum Opinion
Page 13

would amount to a crime; and 2) the perpetrator did an
act in furtherance of that attempt which goes beyond
mere preparation.

Motta v. Gov't of the V.I., 2004 WL 2848467, at *2 (D.V.I.

App. Div. Nov. 30, 2004)(citations omitted).

George testified that approximately a month before the
shooting, he spoke with Charles and Audain at Coral World in St.
Thomas.  He stated that Charles asked who he was, and he
responded by using his nickname "Shango."  George said that "I
continued to ask him why he asked me who I was, and he told me
because the talk on the street is you're the one that stabbed me.
He went on to say now that I'm seeing you, you're not the one
that stabbed me." (J.A. 213.)

George testified that he next saw Charles the night of the
shooting at the V.I. Taxi Association.  He testified that he
spoke with Charles at the event and bought him a drink.  Later,
he spoke with Charles and Audain as they were dancing.  He
testified "I said, someone told me that you guys say you all
going to throw me in, meaning to kill me." (J.A. 218.) He stated
that they "looked at me like in shock," disputing any trouble,
and assured him "everything safe." (Id.)

George testified that a few hours later, Charles, Audain,
and Fatman surged at him from behind the bushes as he attempted

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 14

to enter his house.  As he reached for the door knob, Charles
fired shots that broke both his arms.  George stated that "when I
was shot in the arm, I hit the door and when I hit the door, I
fell flat on the ground  with my head facing the step . . . . I
was on the ground lying motionless, my eyes were closed with my
hands spread out." (J.A. 226.)  Casner asserts that the evidence
about the suggestion of the prior history between Charles and
George, that Charles was lying in wait, and that he repeatedly
shot George at close range as George played dead, was sufficient
to establish the commission of an attempted murder.  Viewing this
evidence in the light most favorable to the government, the Court
agrees.

### b. First Degree Robbery

Charles was convicted of aiding and abetting a first degree
robbery. Virgin Islands law defines robbery as "the unlawful
taking of personal property in the possession of another, from
his person or immediate presence and against his will, by means
of force or fear." V.I. Code Ann. tit. 14, § 1861.   A person
commits first degree robbery

> when, in the course of the commission of the crime or
> of immediate flight therefrom, he or another
> perpetrator of the crime:
>
> (1) Causes physical injury which is incapacitating in
> any way to any person who is not a perpetrator of the

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 15

crime; or

(2) Displays, uses or threatens the use of a dangerous weapon.

*Id.* § 1862.   At trial, George stated that following the onslaught of bullets, Fatman and Audain "came up on the porch." (J.A. 230.)  He testified that "Shawn Audain started like patting me down on the right side, also pulling on my chain to try to take it off.  He took $1400 out of my right front pocket." (*Id.*)  After Audain retrieved the money, the three assailants left the scene.  Viewing the evidence of Charles' role in the shooting that preceded Audain's taking of Charles' property in the light most favorable to the Government, the Court finds sufficient evidence for a reasonable trier of fact to find Charles guilty of first degree robbery.

### c. First Degree Assault

Charles was convicted of two counts of first degree assault. He was charged with first degree assault by (1) attempting to murder George and (2) assaulting George with intent to commit robbery. "The first degree assault statute prohibits attempting or threatening the use of violence during the commission of any

one of several enumerated crimes."[2] *Arsimendy v. Gov't of the
V.I.*, 2010 WL 2985953, at * 6 (D.V.I. July 16, 2010).  That
statute provides in pertinent part: "[w]hoever . . . with intent
to commit murder, assaults another . . . shall be imprisoned not
more than 15 years." V.I. Code Ann. tit. 14, § 295(1).  To
establish that a defendant is guilty of first degree assault, the
government must prove: "(1) the defendant made an assault upon
the victim resulting in the victim being put in fear of immediate
bodily harm, and (2) that he did so with the specific intent to
commit one of the enumerated crimes against the victim. *Id.*
Viewing the evidence in the light most favorable to the
Government, there was sufficient evidence for a reasonable trier
of fact to find the defendant guilty on both counts of first
degree assault.

### d. Using an Unlicensed Firearm During the Commission of a Crime of Violence

Charles was convicted of three counts of use of an
unlicensed firearm during the commission of a crime of violence.
In order to establish that the defendant used an unlicensed
firearm during the commission of crime of violence, the

---

[2]Assault is defined as attempting to use "any unlawful violence upon
the person of another with intent to injure him," or making "a threatening
gesture showing in itself an immediate intention coupled with an ability to"
use unlawful violence.  V.I. Code Ann. tit. 14, §§ 291, 292.

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 17

government must prove: (1) use of a firearm, (2) without authorization, and (3) during a crime of violence.[3] *See United States v. Xavier*, 2 F.3d 1281, 1289 (3d Cir. 1993).

Here, George's testimony established that Charles used a handgun during the shooting, which discharged multiple bullets into George's body.  Such a weapon meets the definition of a firearm under Virgin Islands law.  *See* V.I. CODE ANN. tit. 23, § 451(d). At trial, Charles stipulated that he was not licensed to carry a firearm.  Attempted murder, first degree assault, and first degree robbery, are all crimes of violence. *See id.* at (e). Accordingly, sufficient evidence existed for a reasonable jury to conclude that Charles was guilty of three counts of possession of a firearm during a crime of violence.

**e.  Unauthorized Possession of Ammunition**

Subsequent to Casner's filing of his *Anders* brief, Charles' conviction of unauthorized possession of ammunition was vacated

---

[3]The Virgin Islands Code defines as a firearm: "any device by whatever name known, capable of discharging ammunition by means of gas generated from an explosive composition, including any air gas or spring gun or any "BB" pistols or "BB" guns that have been adapted or modified to discharge projectiles as a firearm." V.I. Code Ann. tit. 23, § 451(d).  It defines as a "crime of violence": "the crime of, or the attempt to commit, murder in any degree, voluntary manslaughter, rape, arson, discharging or aiming firearms, mayhem, kidnapping, assault in the first degree, assault in the second degree, assault in the third degree, robbery, burglary, unlawful entry or larceny." *Id.* at (e).

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 18

by the trial court.[4]  As such, the Court need not proceed with a sufficiency analysis on that count.

**3.    Sentence**

The final possible issue for review is the appropriateness of Charles' sentence.

"In general, the severity of a sentence is not reviewable so long as it falls within the statutory limits." *Chick v. Gov't of the V.I.*, 941 F.Supp. 49, 51 (D.V.I. App. Div. 1996).

Charles was sentenced to twenty years of imprisonment, with five years suspended, on Count Nine, attempted first degree

---

[4] Charles was convicted of unauthorized possession of ammunition in violation of Code Ann. tit. 14, § 2256(a). To obtain a conviction under 14 V.I.C. § 2256, the government must prove the following two elements beyond a reasonable doubt: (1) that Charles possessed ammunition and (2) that he was unauthorized to possess such ammunition. *See United States v. Daniel*, 518 F.3d 205, 208 (3d Cir. 2008).

The United States Court of Appeals for the Third Circuit in *United States v. Daniel*, 518 F.3d 205 (3d Cir. 2008), reversed a defendant's conviction for unlawful possession of ammunition because the government had failed to proffer evidence as to whether the defendant was authorized to possess ammunition. The Third Circuit observed that "while Virgin Island law criminalizes the possession of ammunition 'unless authorized by law," 14 V.I.C. § 2256, it does not establish a licensing requirement for ammunition. Nor does it provide any specific procedure by which possession of ammunition may be licensed or otherwise authorized." *Id.* at 208. The Third Circuit rejected the Government's theory that by proving a defendant lacked a firearm license it had provided sufficient proof that the defendant was not authorized to possess ammunition. *Id.* The *Daniels* Court declined to so link the authorization requirements. *Id.* ("[W]e are loath to construe these provisions to create an offense relating to the possession of ammunition not enunciated by the Virgin Islands legislature.")(citation omitted).

On June 15, 2009, Casner filed a Notice of a November 24, 2008 Order by the Superior Court granting a motion by Charles to amend his judgment to vacate the portion sentencing Charles on the unauthorized possession of ammunition count.

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 19

murder. He was sentenced to fifteen years of imprisonment on Count Ten, using an unlicensed firearm during the commission of a crime of violence, namely attempted first degree murder. His sentence on Count Ten was ordered to run consecutively to that on Count Nine. Charles was sentenced to ten years of imprisonment for first degree robbery in Count Fourteen. He was sentenced to fifteen years for using an unlicensed firearm during the commission of a crime of violence, namely robbery in Count Fifteen. His sentence for Count Fifteen was ordered to run consecutively to that on Count Fourteen. His sentence imposed for Count Nine and Count Ten was imposed to run concurrently with his sentence imposed for Count Fourteen and Count Fifteen.

As outlined in counsel's brief, the terms of imprisonment imposed for the offenses fell within the statutory parameters. Casner further notes that where the trial court ordered that Charles' sentence run consecutively, that sequence was set by statute. Given that the trial court was merely adhering to statutory mandates, there was no illegality in that respect.

The trial court also ordered that Charles would be "held jointly and severely liable for the restitution of all hospital bills incurred by the victim, Lahkeal George." (J.A. 489.) Additionally the court ordered that Charles pay court costs in the amount of $75. Charles wishes to challenge the order of

Charles v. Gov't of the V.I.
Crim App. No. 2006-45
Memorandum Opinion
Page 20

restitution because he is incarcerated.

Section 203 of title 34 of the Virgin Islands Code, known as the Victim's and Witness' Bill of Rights provides in relevant part:

> A victim has the right to receive restitution for expenses or property loss incurred as a result of a crime. The judge shall order restitution at every sentencing *for a crime against person* or property, or as a condition of probation or parole, unless the court finds a substantial and compelling reason not to order restitution....

V.I. CODE ANN. tit. 34, § 203(d)(3). "Unlike §§ 3711(a), 3721, and 4606, which authorize restitution in only specific instances (i.e., probation or parole), § 203(d)(3) *requires* that a judge issue a restitution order either at the sentencing itself *or* as a condition of probation or parole where the crime is one against person or property." *Gov't of the V.I. v. Marsham*, 293 F.3d 114, 118 (3d Cir. 2002).

The Court of Appeals for the Third Circuit touched on an inmate's ability to provide such restitution in *Gov't of the V.I. v. Marsham*, 293 F.3d 114 (3d Cir. 2002). There the *Marsham* Court was considering "whether the Territorial Court [could] order a convicted defendant to pay restitution without first sentencing him to probation." 293 F.3d at 116. Case law from this Division had previously suggested that sections 3711(a) and 3721 of title

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 21

5, precluded territorial judges from ordering a defendant to pay restitution on crimes while imprisoned on those offenses. The Third Circuit differed from that interpretation, concluding that §§ 3771 and 3721 "merely permit-and indeed, § 3721 requires-restitution if and when probation is granted, but they do not restrict the sentencing judge in any way from ordering restitution." The *Marsham* Court further highlighted the broad authority for a sentencing judge to order restitution contemplated in the Victim's and Witness' Bill of Rights.

There, the Third Circuit was unpersuaded by a policy argument that inmates lack the financial wherewithal to satisfy restitution while in jail:

> [T]his argument ignores the fact that not all inmates are indigent, and that quite a few may be able to afford payments despite being incarcerated. Indeed, it is contrary to common sense to tie the hands of the sentencing court and prohibit it from ordering wealthy criminals to make restitution to their victims in every case where such defendants are sent to jail.

*Id.* at 119.   This Court similarly concludes that a sentencing judge is not estopped from ordering a defendant to pay restitution while the defendant is imprisoned.   Accordingly, Charles is without a meritorious basis to challenge the restitution order.

With regard to the first *Anders* inquiry, the Court is

*Charles v. Gov't of the V.I.*
Crim App. No. 2006-45
Memorandum Opinion
Page 22

satisfied that counsel fulfilled his duty by reviewing the record

and arguing why any colorable issues are frivolous.

As to the second *Anders* inquiry, our independent review of

the record reveals no issues of arguable merit.[5]

## IV.   CONCLUSION

For the reasons stated above, the Court will affirm Charles'

convictions.   The Court will also grant counsel's motion to

withdraw.

---

[5]

In *Simon v. Gov't of the Virgin Islands*, 2012 U.S. App. LEXIS 9399 (3d Cir. May 9, 2012), Carl Simon ("Simon") filed a petition for writ of habeas corpus pursuant to 5 V.I.C. § 1301 with the trial court. The petition was denied. Simon then appealed to this Court's Appellate Division. Thereafter, appointed counsel moved to withdraw in accordance with *Anders v. California*, 386 U.S. 738 (1967) [hereafter *Anders*]. This Court then remanded the appeal to the trial court for a determination of whether a Certificate of Probable Cause ("CPC") should be issued. The trial court issued a CPC. Subsequently, this Court affirmed the trial court's denial of Simon's habeas petition based on the *Anders* brief. This Court found the *Anders* brief "adequate on its face."

On appeal, the Third Circuit held that, in light of the CPC, the "*Anders* brief was inadequate." *Simon*, 2012 U.S. App. LEXIS 9399, at *12. It further held that "once the Superior Court issued the CPC, clearly there was arguable merit to the appeal. The Appellate Division should then have ordered briefing on the merits..." *Id.* at *13.

Here, there exists no Certificate of Probable Cause or other intervening factor which might render Attorney Casner's *Anders* brief "inadequate" or which might prompt this Court to order additional briefing on the merits.